UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Ft. Pierce Division

**Case Number:  09-14133-CIV-MARTINEZ-LYNCH**

JOY FELDMAN and DANIELLE
DIBERARDINO,

       Plaintiffs,

vs.

AMY CUTTING, an individual, and
HEALTHY HARVEST GOURMET MARKET,
INC., d/b/a AMY'S ORGANIC GOURMET,

       Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF FELDMAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiff Joy Feldman's Motion for Partial

Summary Judgment (D.E. No. 22). After careful consideration and for the reasons set forth

below, the Court grants in part and denies in part Plaintiff's motion.

### I.  Relevant Procedural and Factual Background

Plaintiffs Joy Feldman ("Plaintiff" or "Feldman") and Danielle Diberardino (collectively

"Plaintiffs") are former employees of Defendant Healthy Harvest Gourmet Market, Inc.

("Defendant") or ("Healthy Harvest"), which is a restaurant and food market.  Defendant Amy

Cutting ("Defendant" or "Cutting") owns and operates Healthy Harvest.

Plaintiffs allege that they were employed as office managers that they "performed

primarily or exclusively nonexempt work" and that "[t]hey consistently worked in excess of forty

hours per work week, but did not receive proper overtime wages for all of [the] hours worked in

excess of forty within a work week."  (D.E. No. 1 at 3). Plaintiffs have filed suit alleging

violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), seeking overtime

compensation.  Plaintiff Feldman has filed a motion for partial summary judgment, which this

Court now considers.

## II.  Legal Standard

A motion for summary judgment should be granted "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  By its very terms, this standard provides

that "the mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there will be

no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

(1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  An

issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find

for the non-moving party.  *Anderson*, 477 U.S. at 248;  *Matsushita Electric Indus. Co.,* 475 U.S.

at 586.  It is "material" if it might affect the outcome of the case under the governing law.

*Anderson*, 477 U.S. at 248.  In addition, in considering a motion for summary judgment, the

Court is required to view the evidence in the light most favorable to the non-moving party.  *Id*. at

255.

If the moving party bears the burden of proof at trial, the moving party must establish all

essential elements of the claim or defense in order to obtain summary judgment.  *See United*

*States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 2d 1428, 1438

(11th Cir. 1991).  The moving party  "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).  "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 3d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.3d 1472, 1477 (11th Cir. 1991)). *See also* Fed. R. Civ. P. 56(e).

In contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex*, 477 U.S. at 324. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id*. at 323 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 324.  Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III.  Analysis

Plaintiff Feldman has filed a motion for partial summary judgment against Defendants as to their liability for overtime compensation and as to the amount of compensation owed for the time periods of September 17, 2007 through December 31, 2007 and of April 14, 2008 through June 21, 2008.  Feldman specifically argues that the undisputed evidence establishes that she was not an exempt employee under either the administrative or executive exemption and thus, she is entitled to overtime compensation.  She also argues that the undisputed evidence establishes that she is entitled to $10,725.00 in overtime compensation and that she is also entitled to liquidated damages in an equal amount.  After careful consideration, the Court grants in part and denies in part this motion.  The Court grants the motion in that it finds that no genuine issues of material fact remain as to the exemption issues and that Feldman was not an exempt employee under either the administrative or executive exemption for the time periods of September 17, 2007 through December 31, 2007 and of April 14, 2008 through June 21, 2008.  The Court denies Plaintiff's motion on all other issues.

### A.      Executive and Administrative Exemption

Under the FLSA, an employer who employs an employee "for a workweek longer than forty hours" must compensate that employee "for his employment in excess" of forty hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  However, "any employee employed in a bona fide executive [or] administrative . . . capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of the Department of Labor] . . .)" is exempt from this requirement.  29 U.S.C. § 213(a)(1).  In her motion for summary judgment, Plaintiff has argued that neither the executive

nor the administrative exemption applies to her for two specific time periods she was employed by Healthy Harvest.  In their response, Defendants do not address the executive exemption; however, Defendants have argued that the administrative exemption applies to Plaintiff.

The exemptions have been defined in regulations promulgated by the Department of Labor.  As these definitional regulations were adopted pursuant to express legislative authority, *see* 29 U.S.C. § 213(a)(1), these regulations are binding on the Court and have "the force and effect of law."  *Wirtz v. Keystone Readers Serv., Inc.*, 418 F. 2d 249, 260 (5th Cir. 1969).[1]  It is the employer's burden to demonstrate that all of the elements of the regulation defining the exemption are satisfied.  *See Wirtz v. C & P Shoe Corp.*, 336 F. 2d 21, 28 (5th Cir. 1964).[2]

The administrative exemption applies where an employee: (1) receives at least $455 per week; (2) primarily performs office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) primarily performs tasks which require the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200.   It is undisputed that Plaintiff received at least $455 per week.  Plaintiff argues, however, that the second and third elements of this exemption are not met.  Defendants argue that there are genuine issues of material fact as to these elements.[3]

---

[1]In *Bonner v. Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[2]This case is binding precedent.  *Bonner,* 661 F.2d at 1206.

[3]In their response, Defendants make no citations to the record, with the exception of citing to Feldman's deposition to establish her salary, and the few citations to legal authority they make are only general citations. Defendants appear to be relying on the jumble of facts listed without analysis in their statement of material facts to establish that a genuine issue of material fact remain as to these issues in this case.  The Court also acknowledges that Defendants have

To satisfy the second element, the "employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.201(a). The regulations state that a number of functional activities meet this requirement including work in areas such as "tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities."[4]   29 C.F.R. § 541.201(b).

To satisfy the third element, "an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a). An employee "can exercise discretion and independent judgment even if . . . [his or her] decisions or recommendations are reviewed at a higher level." *Id*. "The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e). "The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work." *Id*.

The regulations also provide a list of factors to consider in applying this element. The

---

provided additional citations, without explanation or analysis, to Brian Ahern's deposition in support of their arguments that issues of fact remain as to whether this exemption applies. *See* (D.E. No. 65).

[4]Work related to the management or general business operations of the employer or the employer's customers, however, is not limited to these activities. *See* 29 C.F.R. § 541.201(b).

regulations state:

> Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

The term "primary duty" as it applies to both elements "means the principal, main, major or most important duty that the employee performs" and "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a).

First, the Court finds that there are no genuine issues of material fact that for the time period of September 17, 2007 through December 31, 2007, Plaintiff Feldman was not exempt under the administrative exemption. Plaintiff has offered her own affidavit stating that during this time period her "officer duties were clerical in nature" and that she "did not have any authority to make any decisions on behalf of Defendants." (D.E. No. 35-1, Feldman Decl. at 2). Defendants have not offered any evidence sufficient to dispute this for purposes of summary judgment.

Defendants attempt to rely on the deposition testimony of Defendant Amy Cutting, the

owner of Healthy Harvest, to establish that genuine issues of material fact remain as to the application of the administrative exemption during this time period. Cutting, however, states that until December 15, 2007, when she fired David Hirth as operating manager and hired Brian Ahern as general manager, she only provided the capital for the opening of the business and she was "not involved in any aspect of the operations." (D.E. No. 42, Cutting Depo. at 16-17).[5] She also states that she had no knowledge about what Plaintiff Feldman did on a daily basis before December 15, 2007. *Id*. at 26-28. She states only that before December 15, 2007 she had met Feldman a couple of times and knew that Feldman was preparing her a book containing bank statements, profit and loss information, copies of credit card statements, and any documents showing possible fraudulent activity. *Id*. at 28. This vague evidence regarding Feldman's compilation of a book does not establish that Feldman was performing tasks sufficient to meet the second element or making decisions sufficient to meet the third element of the administrative exemption test.

In addition, Cutting testified that the first week or two after December 15, 2007, she did not have any increased interaction with Feldman because she was focused on training with Ahren. *Id*. at 30. She testified that her interaction with the managers was a slow development, taking place over a four-month period. *Id*. at 30-31. There is no indication in the record that from September 17, 2007 through December 31, 2007 that Cutting was aware of Feldman's job duties or her daily activities. Thus, Cutting's deposition testimony does not establish that genuine issues of material fact remain with regard to this time period and the application of the administrative exemption to Feldman.

---

[5]Throughout this order, the Court cites to the original page numbers in the deposition and not any page numbers that may appear at the bottom of the page or any page numbers added by the CMECF system in the top right corner of the page.

Defendants also attempt to rely on the deposition testimony of Brian Ahern to establish that genuine issues of material fact remain.  It is, however, undisputed that Ahern did not begin working at Healthy Harvest until December 15, 2007.  (D.E. No.65-1, Ahern Depo. at 24).  Moreover, Ahern testified that when he started Feldman was not an office manager. (D.E. No. 65-3, Ahern Depo. at 147).  Ahren does testify that after he began working at Healthy Harvest Feldman was quickly given more responsibility and began providing him with lots of information.  *Id*. at 149-150.  There is, however, no evidence, that Feldman was performing duties sufficient to meet the second element or that she was exercising the type of discretion or independent judgment required under the third element of the administrative exemption test in the time period from December 15, 2007 to December 31, 2007.  Thus, the Court also finds that Ahren's deposition does not establish that genuine issues of material fact remain with regard to this time period and the application of the administrative exemption.

Finally, to the extent Defendants are attempting to rely on Feldman's own deposition to establish that a genuine issue of material fact remain with regard to the application of the administrative exemption from the time period of September 17, 2007 until December 31, 2007, the Court finds these arguments are without merit.  Defendants' citations to Feldman's deposition particularly do not establish that Feldman was making decisions sufficient to meet the third element of the administrative exemption during this time period.[6]

Moreover, Defendants state in their statement of material facts that Feldman testified that "she performed the same duties throughout the term of her employment at Healthy Harvest." (D.E. No. 41 at 4).  This statement misrepresents the record.  First, in making this statement,

---

[6]*See supra* note 3.

Defendants cite to page 324 of Feldman's deposition which has not been provided to the Court.

The following exchange, however, takes place on page 326 of Feldman's deposition.

> Q.     All right.  And again, according to you, your responsibilities were the same
>         throughout your employment period; there was no difference between January 1,
>         2008 and April 14, 2008?
>
> A.      I did the same stuff, no.

(D.E. No. 40, Feldman Depo. at 326).  This in no way supports Defendants' statement in their

statement of facts that Feldman testified she had the same duties throughout her employment at

Healthy Harvest.  Thus, the Court finds that no genuine issues of material fact remain as to this

issue and the administrative exemption does not apply to Plaintiff Feldman for her work between

September 17, 2007 and December 31, 2007.

With regard to the time period of April 14, 2008 through  June 21, 2008,[7] the Court also

finds that no genuine issues of material fact remain as to the application of the administrative

exemption.  Specifically, the Court finds that no genuine issues of material fact remain as to the

third required element of the administrative exemption, which requires that "an employee's

primary duty must include the exercise of discretion and independent judgment with respect to

matters of significance." 29 C.F.R. § 541.202(a).[8]

It is unclear exactly which facts Defendants are arguing establish that Plaintiff Feldman

---

[7]Feldman concedes that genuine issues of material fact remain with regard to the
application of the administrative exemption for the remaining time periods she worked at Healthy
Harvest, and she has not sought summary judgment with regard to this time period.  *See* (D.E.
No. 35 at 2).

[8]Plaintiff also seeks summary judgment on the basis of Defendants' inability to meet the
second element.  The Court, however, finds it unnecessary to discuss the second element as to
this time period as Defendants cannot meet the third element and must establish all three
elements.  *See* 29 C.F.R. § 541.200(a) (using the word "and" in listing the three elements).

met this requirement.  With regard to this element, there are no citations to the record in

Defendants' response or even to Defendants' statement of material facts.  The list of facts or large

quotations to testimony within the statement of facts are insufficient because they refer to vague

or conclusory statements made by witnesses which cannot create a genuine issue of material,[9] they

misrepresent the actual testimony in the record, or they are not enough to create a genuine issue of

fact that Feldman's primary duties included exercising the requisite discretion and independent

judgment with respect to matters of significance. Moreover, it is often completely unclear whether

such actions were taken within the relevant time period of April 14, 2008 through June 21, 2008

or that any of these alleged duties or actions were even Feldman's primary duties.

  The Court acknowledges that Defendants have also submitted the deposition testimony of

Brian Ahern to support their argument that Plaintiff Feldman was an exempt employee under the

administrative exemption.  It is, however, undisputed, that Ahern was not working at Healthy

Harvest for the majority of the time period between April 14, 2008 and June 21, 2008.  Ahern

himself testified that he left Healthy Harvest on April 17, 2007 and that they had already hired

Curtis Hillard as general manager before he left  (D.E. No. 65-4, Ahern Depo. at 104-107, 191).

Moreover, Plaintiff Feldman has stated and no one has disputed, that her supervisor as of April

14, 2007 was Curtis Hillard.  (D.E. No. 35-1, Feldman Decl. at 2).  Defendants have also not cited

any specific testimony from Ahern that Feldman's primary duties in the time period between April

14 and April 17 met the requirements of the third element of this test. Thus, the Court finds that

Ahern's deposition testimony, while certainly relevant to the time period for which Feldman has

---

   [9]The Eleventh Circuit has "consistently held that conclusory allegations without specific
supporting facts have no probative value, and are legally insufficient to defeat summary
judgment." *Sun v. Girardot*, 237 Fed. Appx. 415, 417 (11th Cir. 2007).

not sought summary judgment, does not establish genuine issues of material fact as to the time period from April 14, 2008 until June 21, 2008.

Despite Defendants' lack of specific arguments, the Court discusses the testimony Defendants appear to be relying on to establish genuine issues of material fact. First, Defendants have cited large quotations of Cutting's deposition in which Cutting generally describes different tasks Feldman performed. This testimony is in general vague and conclusory. For example, Cutting states that Feldman "did everything," that "she was very hands on," that Feldman "made sure that federal and state laws were observed," that Feldman "worked closely" with the company's accountant, that Feldman "did research online to make sure we were in compliance," that "she did close-out procedures," that Feldman worked with others "to make sure the operation . . . [was] running smoothly," and that Feldman "gave us a lot of input that we thought was important." (D.E. No. 42, Cutting Depo. at 35, 44-47). Such vague and conclusory statements are not sufficient to create a genuine issue of material fact. *See Sun v. Girardot*, 237 Fed. Appx. 415, 417 (11th Cir. 2007) (stating that "conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment.").

Cutting also discusses conduct that is not enough to create a genuine issue of fact that Feldman's primary duties included exercising the requisite discretion and independent judgment with respect to matters of significance. For example, Feldman's use of a MIRCOS card to void items, clock people in and out, issue gift certificates, or provide employees with free meals does not establish without more explanation that Feldman was using her independent discretion with respect to matters of significance. Nor does her preparation of documents such as product order lists or spread sheets or her delivery of certain documents to certain people establish that she was

-12-

exercising the required discretion as to significant matters.  Also, the mere fact that Feldman

interviewed several candidates for an assistant position without more does not establish that she

was exercising the requisite discretion or independent judgment.  *See*, *e.g.*, 29 C.F.R. § 541.202.

Next, Defendants argue that two employees, Juan Solas and an unnamed restaurant

hostess, were terminated "based upon the specific recommendation of Ms. Feldman."  (D.E. No.

41 at 5).  This statement, however, misrepresents the testimony in the record.[10]  Cutting actually

testified that Feldman told Ahern, indicating also that this is outside of the relevant time period,

that Solas 's eyes "looked funny, like it was red or his pupils or something."  (D.E. No. 42,

Cutting Depo. at 48).  There is no indication that Feldman actually recommended that Solas be

fired.  Moreover, Cutting admits that she has no personal knowledge of this situation as it was a

conversation between Ahern and Feldman and it was another employee, Anna Ochiogrosso, who

actually fired Solas.  *Id*. at 47-49.

With regard to the unnamed hostess, Cutting's actual testimony was that Feldman told her

that the hostess had a bad attitude and later the hostess was fired.  *Id*. at 49-51.  Cutting testified

that she did not really know whether Feldman's comment had anything to do with the hostess

---

[10]Defendants also state that Feldman "successfully recommended to General Manager Brian Ahern that Healthy Harvest hire her husband . . . to perform work for the company as a paid independent contractor."  (D.E. No. 41 at 6).  There is also evidence in the record that Feldman recommended that Healthy Harvest hire a friend of hers, Rod, as a store manager and that Rod was in fact hired.  (D.E. No. 65-4, Ahern Depo. at 191).  It is, however, undisputed that both of these hires did not occur during the relevant time period.  *Id*. at 161-162, 191-193.  Feldman's husband was hired at some point in January 2008, *see id*. at 161-162, and Rod was hired at some point when Ahern was still acting as general manager as he interviewed Rod and hired him, *see id*. at 191-193.  Moreover, this situation where Feldman recommended that Healthy Harvest hire her husband and later her friend does not demonstrate that she was exercising the required discretion on matters of significance.  This evidence does more to support that Feldman simply helped her friend and her husband get a job.

getting fired.  *Id*. at 51.  Cutting does not even know who fired the hostess.  *Id*. at 50.  Thus, there is no evidence that either Solas or the unnamed hostess were fired on Feldman's "specific recommendation."

Defendants also cite to a situation where Feldman became concerned about the use of the "dishwasher people as a janitorial and lawn maintenance company."  *Id*. at 51.  Feldman thought after a discussion with the accountant that Healthy Harvest needed to hire an independent company to perform these services.  *Id*.  Cuttting approved this and allowed Feldman to interview companies.  Cutting asked Feldman which one she would pick after the interviews and went with her recommendation.  *Id*.  The Court agrees that this example comes the closest to establishing that Feldman exercised the required independent judgment.  However, this incident did not take place during the relevant time period under the Court's consideration as it occurred while Ahern was at Healthy Harvest.  (D.E. No. 65-4, Ahern Depo. at 192).  Moreover, this one example of Feldman involving herself in a hiring matter and making a recommendation does not establish that this was part of her primary duties.  *See, e.g.*, 29 C.F.R. § 541.700(a).

Defendants also state in reliance on Cutting's testimony that Feldman "responded to the Florida Agency for Workforce Innovation on behalf of Healthy Harvest to applications for unemployment compensation by former employees in cases where she objected to the application for benefits."  This, however, also misrepresents the record.  Cutting actually testified that Feldman filled out a form that said why people were fired and returned it to the unemployment office.  (D.E. No. 42, Cutting Depo. at 52-53).  Cutting testified that she was unaware of where Feldman got the information for these forms.  *Id*. at 53.  Cutting then testified that she remembered one incident when Ahern was working at Healthy Harvest, and thus outside the

-14-

relevant time frame, where Feldman personally did not want a fired employee to get

unemployment compensation.  *Id*.  Cutting, however, is unaware of any steps Feldman took other

than filling out the form.  *Id*.  Filling out forms in and of itself does not demonstrate that Feldman

was exercising the requisite discretion or independent judgment.

In addition, Defendants state in reliance on specific portions of Cutting's deposition and

Feldman's deposition that Feldman had two credit cards which had no budget or limit and she was

able to make charges on these cards without Cutting's knowledge.  First, neither Feldman nor

Cutting states that these cards did not have a limit.  More importantly, Defendants have not stated

how the possession of these cards shows that Feldman was exercising the requisite discretion.

Cutting does not state what Feldman purchased with these cards and Feldman only discusses

office supplies and stamps.[11] (D.E. No. 38, Feldman Depo. at 204-205); (D.E. No. 42, Cutting

Depo. at 119).

Next, Defendants state in reliance on Cutting's deposition that Feldman "had the authority

to purchase new products to be sold in the Healthy Harvest Food Market."  (D.E. No. 41 at 7).

This is also a misrepresentation of the record.  In her deposition, Cutting states that Feldman had

"some authority" to purchase particular products. (D.E. No. 42, Cutting Depo. at 121)  When

asked if Feldman could purchase new products without asking her whether it could be purchased

or brought into stock, Cutting equivocates, stating that she wasn't there on a daily basis, she just

saw on a Visa form that Feldman ordered certain products.  *Id*. at 121-122.  Cutting states that

from e-mails she reviewed she knew that Feldman would say that she, Cutting, would want a

---

[11]Only parts of Feldman's deposition have been provided to the Court.  It appears there
was more discussion of the charges on the credit card before page 204.  These sections, however,
were not provided to the Court.

product and Feldman would provide recommendations.  *Id*. at 122.  Cutting then states that

Feldman did not have the authority to choose what products would be stocked.  *Id*.  Cutting states

that she believes this was the market department's responsibility.  *Id*.  This confusing

equivocation does not establish that Feldman's primary duty included exercising discretion and

independent judgment with regard to the product purchases.

Defendants have also provided a bullet-point list of various duties they argue Feldman

testified that she performed for Healthy Harvest.  These duties are again either vague or

conclusory,[12] a misrepresentation of the record,[13] or they do not establish the requisite exercise of

discretion on matters of significance.[14]

Finally, Defendants include a vague statement that "Feldman had supervisory authority

over other employees of Healthy Harvest while she was employed by the company as Office

---

[12]For example, Defendants state "[s]he discharged a set of responsibilities that extended
to both the restaurant and food market portions of the business."  (D.E. No. 41 at 7).

[13]For example, Defendants state that Feldman "conducted an investigation" with regard to
some possible fraudulent expenses.  (D.E. No. 41 at 7).  The record, however, reveals that
Feldman simply reviewed the bank statements, entering data from these statements into a
computer program to match the numbers with those in the company's records and noticed that
money was being taken out of the company bank account improperly. (D.E. No. 39, Feldman
Depo. at 229-233, 238-239).  She told David Hirth, the general manager at the time, and Cutting.
*Id*. at 233. Hirth then called the police.  *Id*. at 233, 240.  Feldman was performing only clerical
work by entering data, and there is no indication that she was exercising the required discretion.
*See* 29 C.F.R. § 541.202(e). Moreover, this occurred in 2007, making it outside of the relevant
time period.  *Id*. at 231.

[14]For example, sending out paychecks, sending two demand letters at a manager's
direction to customers who passed bad checks, attending manager's meetings and preparing
minutes, sending out bills, receiving statements and invoices, giving checks to others for
signature, giving reports to the general manager, and providing documents or reports to the
company's accountant are not examples of an employee exercising the required discretion.  *See*
29 C.F.R. § 541.202(e).

Manager."  Cutting does state in her deposition that Feldman "oversaw" Justin Curn, Rob Hagan, Scott Schulman, and Danielle DiBerardino.  (D.E. No. 42, Cutting Depo. at 44-45).  It is, however, unclear when Feldman "oversaw" these employees, what her supervision of these employees entailed, and how this alleged supervision demonstrates the requisite exercise of discretion on matters of significance. Thus, the Court finds that Defendants have failed to meet their burden on summary judgment as to their affirmative defense with regard to the time period of April 14, 2008 through June 21, 2008.  No genuine issues of material fact remain as to the application of the administrative exemption based on the lack of evidence presented relating to Feldman's exercise of discretion or independent judgment on matters of significance.

Plaintiff also moves for summary judgment on the issue of whether the executive exemption applies to her.  In order to meet the executive exemption an employee must: (1) receive not less than $455 per week; (2) manage the enterprise in which she is employed or manage a recognized department or subdivision of the enterprise; (3) customarily and regularly direct the work of two or more other employees; and (4) have the authority to hire or fire other employees or to have particular weight given to her suggestions and recommendations as to hiring, firing, advancement, promotion or any other change of status of other employees.  29 C.F.R. § 541.100. Defendants have not addressed the executive exemption in their responses to Plaintiff's motion for summary judgment.  Thus, it appears that Defendants concede that the executive exemption does not apply to Plaintiff.

In addition, for the reasons discussed above with regard to the administrative exemption there are no genuine issues of material fact that Plaintiff Feldman was not an exempt employee under the executive exemption for the time period of September 17, 2007 through December 31,

2007. The Court also finds that no genuine issues of material fact remain as to the executive exemption with regard to the time period of April 14, 2008 through June 21, 2008 at issue because there are no genuine issues of material fact as to the fourth element of the executive exemption test, which requires an employee to have the authority to hire or fire other employees or to have "particular weight" given to her suggestions on these issues.

First, there is no evidence that Feldman had any authority to hire or fire employees.  With regard to whether an employee's suggestions or recommendations are give "particular weight," the regulations provide for a nonexhaustive list of factors to consider when determining whether an employee's suggestions or recommendations on these issues were given "particular weight." These factors include: "whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon."  29 C.F.R. § 541.105.

As discussed above with regard to the administrative exemption, there is no evidence that Feldman ever recommended that anyone should be fired or that her recommendations were given any particular weight.  In addition, as also discussed above with regard to the administrative exemption, while there is evidence that Feldman's husband, her friend Rod, and a landscaping company were hired based on her recommendations, there is no evidence that such recommendations were frequently made nor do three accepted recommendations demonstrate that such recommendations were frequently relied upon, and there is no indication that it was part of Feldman's job duties to make such recommendations.  This is particularly true because two of the three recommendations related to getting individuals Feldman had a personal relationship with

jobs rather than fulfilling any sort of job responsibility.  Moreover, "[g]enerally, an executive's

suggestions and recommendations must pertain to employees whom the executive customarily and

regularly directs." 29 C.F.R. § 541.105.  There is no evidence that Feldman's husband, her friend

Rod, or the landscaping company were employees that Feldman regularly directed. Thus, the

Court finds no genuine issues of material fact remain as to the application of the executive

exemption to the relevant time periods and the Court grants summary judgment as to these issues.

**B.       Amount of Overtime Compensation Owed**

Plaintiff also seeks partial summary judgment on the amount of overtime compensation

owed to her for the time periods of September 17, 2007 through December 31, 2007 and of April

14, 2008 through June 21, 2008.  The Court, however, finds that genuine issues of material fact

remain as to both time periods.

First, the Court finds that genuine issues of material fact remain as to the amount of

overtime compensation owed to Plaintiff for the time period of September 17, 2007 through

December 31, 2007.  Feldman has stated that "she worked an average of 50 hours per week during

this time period."  (D.E. No. 35-1 at 2). Defendants, however, have submitted payroll records

which create a genuine issue of material fact as to the time Feldman asserts that she worked

during this period.  *See* (D.E. No. 64-3).  Thus, the Court cannot grant summary judgment as to

the amount of overtime compensation owed for the time period of September 17, 2007 through

December 31, 2007.

With regard to the time period of April 14, 2008 through June 21, 2008, the Court also

finds that genuine issues of material fact remain as to the amount of overtime compensation due

to Feldman.  Feldman has based her calculations of overtime compensation on a calendar she

created in March of 2009.  (D.E. No. 40, Feldman Depo. at 306, 314).  This calendar lists the

number of hours she worked each week.  *Id*.  It is undisputed that this calendar was created after

the fact, and Feldman states only that she probably looked at "appointments to know when I

wasn't there and I had a few little things jotted down that associated with other things that jogged

my memory."  *Id*. at 314-315.  When asked to clarify what "things" she looked at in preparing the

calendar, Feldman stated that she didn't know.  *Id*. at 315.  Also, when Feldman was asked

specific questions about a number of hours and if such hours were accurate she would reply with

answers such as "[t]hat is what I wrote, that is what I worked", "I would assume so", or "could

be."  *Id*. at 317-318.

An FLSA plaintiff "has the burden of proving that he performed work for which he was

not properly compensated."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

The employer, however, has a duty under the FLSA to keep appropriate records of wages and

hours worked.  *Id*.  In situations where the employer has failed to keep proper and accurate

records, the United States Supreme Court has recognized that it would be improper "to penalize

the employee by denying him any recovery on the ground that he is unable to prove the precise

extent of uncompensated work."  *Id*.

Instead, the Supreme Court has erected a burden-shifting standard that applies where an

employer has failed to keep proper and accurate records.  The Supreme Court has held that

> in such situation[s] . . . an employee has carried out his burden if he proves that he
> has in fact performed work for which he was improperly compensated and if he
> produces sufficient evidence to show the amount and extent of that work as a
> matter of just and reasonable inference.  The burden then shifts to the employer to
> come forward with evidence of the precise amount of work performed or with
> evidence to negative the reasonableness of the inference to be drawn from the
> employee's evidence.  If the employer fails to produce such evidence, the court

> may then award damages to the employee, even though the result be only
> approximate.

*Anderson*, 328 U.S. at 687-88.

This issue, however, has not been addressed by the parties.  Thus, it is unclear whether this is a situation where the Defendant employers have failed to keep accurate records as to Feldman's wages and hours worked and thus, it is unclear if this burden-shifting standard even applies.  Moreover, the Court also finds that Feldman's vague and evasive testimony with regard to her calculations and her calendar creates at least a genuine issue of material fact as to whether Feldman has produced sufficient evidence to show the amount and extent of her uncompensated work "as a matter of just and reasonable inference."[15]  Thus, the Court finds that genuine issues of material fact remain as to both time periods with regard to the amount of actual damages, and the Court declines to grant summary judgment on this issue.

### C.   Liquidated Damages

Plaintiff also seeks an award of liquidated damages in an equal amount of the actual damages she has argued she should receive on summary judgment.  "Under the FLSA a district court generally must award a plaintiff liquidated damages that are equal in amount to actual damages." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008).  29 U.S.C. § 216(b) provides that "[a]ny employer who violates the . . . [FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an

---

[15]For these same reasons, genuine issues of material fact would also exist as to the time period of September 17, 2007 through December 31, 2007.

additional equal amount as liquidated damages."[16]  Here, however, as there are genuine issues of

material fact as to the award of actual damages, the Court finds that factual issues also exist as to

an award of liquidated damages, and the Court declines to grant summary judgment on this issue.

Accordingly, it is hereby:

        **ORDERED AND ADJUDGED** that

        Plaintiff Joy Feldman's Motion for Partial Summary Judgment (D.E. No. 22) is

**GRANTED in part** and **DENIED in part** in accordance with the rulings set forth above.  A final

judgment will be entered by separate order.

        DONE AND ORDERED in Chambers at Miami, Florida, this 19 day of November, 2009.

                          _____

                          JOSE E. MARTINEZ

                          UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Lynch
All Counsel of Record

---

    [16]The Portal to Portal Act, 29 U.S.C. §§ 251-262, which amended the FLSA, provides
that an employer who acted in good faith and under the reasonable belief that it was in
compliance with the FLSA is not liable for liquidated damages.  This safe harbor provision
specifically provides:

> if the employer shows to the satisfaction of the court that the act or omission
> giving rise to [the FLSA] action [for unpaid wages] was in good faith and that he
> had reasonable grounds for believing that his act or omission was not a violation
> of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound
> discretion, award no liquidated damages or award any amount thereof not to
> exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.  The employer has the burden of demonstrating that he is entitled to the safe
harbor provision, and the employer must demonstrate both subjective and objective good faith.
*Rodriguez*, 518 F. 3d at 1272.  Because the Court has denied summary judgment on this issue,
the Court does not reach the issue of whether the safe harbor provision applies in this case.